**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

| | |
|---|---|
| **CALVIN XAVIER JOHNSON** | **CIVIL ACTION NO. 24-cv-1660** |
| **VERSUS** | **JUDGE S. MAURICE HICKS, JR.** |
| **JOSHUNNA JONES, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

---

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................ 1

LEGAL STANDARD ........................................................................ 1

MATERIAL FACTS GENUINELY DISPUTED ........................................ 2

ARGUMENT ........................................................................ 4

1. The corrected affidavit does not establish probable cause, and the independent-intermediary doctrine does not apply. ........................ 4

2. The record establishes, and at a minimum creates a genuine dispute, that Detective Jones acted with reckless disregard for the truth. ........................ 6

   *The physician attribution* ........................................ 6

   *The interview* ........................................ 6

   *The medical evidence* ........................................ 7

3. Detective Jones acted with malice. ........................................ 8

4. Detective Jones is not entitled to qualified immunity. ........................ 10

5. Neither the District Attorney, the grand jury, nor the state court insulates Detective Jones. ........................................ 11

   *The District Attorney* ........................................ 11

*The grand jury*.....11

*Judge Hathaway's ruling*.....12

6. Calvin's state-law claim and his claim against the City survive. .....12

CONCLUSION.....13

# TABLE OF AUTHORITIES

Page

Cases

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................11

*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023)....................12

*Bigford v. Taylor*, 834 F.2d 1213 (5th Cir. 1988)....................4, 5, 8

*Brimmer v. A. Copeland Enters., Inc.*, 609 So. 2d 847 (La. App. 5 Cir. 1992)....................8

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010) ....................2, 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ....................1

*Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024)....................5

*Davis v. Hodgkiss*, 11 F.4th 329 (5th Cir. 2021) ....................4

*District of Columbia v. Wesby*, 583 U.S. 48 (2018) ....................4

*Franks v. Delaware*, 438 U.S. 154 (1978)....................4, 10

*Hale v. Fish*, 899 F.2d 390 (5th Cir. 1990)....................4, 5, 7, 10

*Hall v. Trochessett*, 105 F.4th 335 (5th Cir. 2024)....................6

*Hand v. Gary*, 838 F.2d 1420 (5th Cir. 1988)....................12

*Hughes v. Garcia*, 100 F.4th 611 (5th Cir. 2024)....................4

*Jones v. City of Grand Prairie*, No. 99-10104, 209 F.3d 719 (5th Cir. Feb. 9, 2000) (unpublished) ....................7, 9

*Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669 (La. 2006)....................10

*Kohler v. Englade*, 470 F.3d 1104 (5th Cir. 2006) ....................4, 7, 9, 10, 11

*Malley v. Briggs*, 475 U.S. 335 (1986) ....................11

*Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017) (en banc)....................4

*Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446 (La. 1987)....................8

*Morin v. Caire*, 77 F.3d 116 (5th Cir. 1996)....................9

*Pittman v. Boyd Biloxi, L.L.C.*, 566 F. App'x 344 (5th Cir. 2014)....................9

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) ....................2

*RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851 (5th Cir. 2010) ....................1

*State v. Ogden*, 391 So. 2d 434 (La. 1980) ....................12

*Stokes v. Faber*, 552 F. Supp. 3d 225 (E.D. La. 2021) ....................8

*Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005)....................10

*Terwilliger v. Reyna*, 4 F.4th 270 (5th Cir. 2021)....................4

*Thompson v. McGehee*, No. 25-10196, 2026 WL 2069890 (5th Cir. July 17, 2026)....................10

*Tolan v. Cotton*, 572 U.S. 650 (2014) (per curiam)....................2, 10

*United States v. Astroff*, 578 F.2d 133 (5th Cir. 1978) ....................12

*Wilson v. Stroman*, 33 F.4th 202 (5th Cir. 2022)....................12

*Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018)....................4, 7, 8, 10, 12

<u>Statutes</u>

La. R.S. 14:41 ....................5

La. R.S. 14:42(A)(4) ....................5

<u>Rules</u>

Fed. R. Civ. P. 56....................10

W.D. La. LR 56.2....................2

MAY IT PLEASE THE COURT:

## INTRODUCTION

Defendants ask the Court to hold, as a matter of law, that probable cause supported Calvin Johnson's arrest and that Detective Joshunna Jones did not act with reckless disregard for the truth. Their motion rests on a list of nine facts that they say were known to Detective Jones when she swore to her affidavit. Doc. 47 at 13-14. Six of the nine came from Sandra Green alone. Like Detective Jones's affidavit, Defendants' list leaves out every fact that cut the other way:

1. That CJ said "Daddy not hurt my coochie" on the same recording;
2. That she never identified "Daddy;"
3. That she answered "my Granny" when asked what was used to hurt her;
4. That the physician found a normal examination and witnessed no disclosure; and
5. That Ms. Green, after fifty-four days of exclusive custody of the child, was the only source of every allegation that made this a first-degree rape case.

Defendants' motion and Calvin's motion for partial summary judgment present the same questions on the same record. Whether the corrected affidavit establishes probable cause is a question of law, and it does not. Whether Detective Jones acted with reckless disregard for the truth turns on her own testimony and the documents in her own file, which establish recklessness as a matter of law or, at a minimum, are sufficient for a reasonable jury to find recklessness. Either way, Defendants' motion must be denied.

## LEGAL STANDARD

Because Defendants will not bear the burden of proof at trial, they may discharge their initial burden by pointing to the absence of evidence supporting an element of Calvin's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). Calvin must then "identify specific evidence in the record and . . . articulate precisely how this evidence supports his claim." Doc. 47 at 9 (quoting *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)). The evidence is viewed in the light most favorable to

Calvin, and the Court may not resolve genuine disputes of fact in Defendants' favor. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*).

The same is true of qualified immunity. Once the defense is raised, Calvin bears the burden of negating it, "but all inferences are drawn in his favor." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *see* Doc. 47 at 16, citing *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

## MATERIAL FACTS GENUINELY DISPUTED

Calvin relies on the Material Facts ("MF") 1-40 enumerated in his Memorandum in Support of his Motion for Summary Judgment (Doc. 40-1 at 3-7), nearly all of which Defendants have admitted. Doc. 49 at 2-11. Pursuant to LR 56.2, he identifies Disputed Facts ("DF") below, each of which concern Defendants' mischaracterizations of the record, which are disputed.

1. Defendants assert that CJ "made statements to medical providers indicating her father had hurt her" and that Dr. Rodriguez notified the police on that basis. Doc. 47 at 1, 3.

   **Response:** Dr. Rodriguez's report records that "[n]o spontaneous disclosure was uttered while at [the] Cara center," and what she told Officer Thompson was information reported to her by Ms. Green. MF 6; Doc. 47 at 3. The pediatric chart notation on which Defendants rely, "my daddy touched me," identifies no one by name. Defs.' Ex. B at 401. Detective Jones agrees that the affidavit's identification of "Calvin Johnson [1994]" did not come from Dr. Rodriguez. MF 32; Ex. 8, Jones Dep. 122:9-17.

2. Defendants assert that in the forensic interview CJ "again made statements indicating that her father had hurt her." Doc. 47 at 1.

   **Response:** In the same interview CJ twice said "Daddy not hurt my coochie," gave her own name when asked Daddy's name, never identified "Daddy" as Calvin (despite being specifically asked "who is Daddy?" by the interviewer), answered "my Granny" when asked what was used to hurt her, and made no statement from which penetration or oral touching could be inferred. MF 15-17, 19-20; Ex. 22.

3. Defendants assert that the medical examination "neither confirmed nor denied a history of sexual abuse." Doc. 47 at 14.

   **Response:** The examination was normal, with "no signs of injury" and "no significant redness or swelling," a finding that contradicts the redness Ms. Green reported and that Detective Jones swore to in her affidavit. MF 5, 24; Ex. 7; Ex. 11 at 3. The unqualified recitation of "neither confirmed nor denied" mischaracterizes the undisputed fact that there has never been any physical evidence that any abuse ever actually occurred.

4. Defendants assert that Calvin's girlfriend "worked nights." Doc. 47 at 14.

   **<u>Response</u>:** The only source of that assertion is Ms. Green's account of what Ms. Lindon told her. Detective Jones never spoke to Ms. Lindon and no information about Ms. Lindon was included in Detective Jones's affidavit other than Detective Jones was unable to make contact with her. Doc. 47 at 5; Doc. 47-A7; MF 28.

5. Defendants assert that Detective Jones "reasonably believed the affidavit presented an accurate summary of the evidence" and had "an honest and reasonable belief in the allegations she made." Doc. 47 at 14, 21.

   **<u>Response</u>:** Detective Jones swore that CJ "did not make any further statements" knowing that she had heard the interview only "to a certain extent" and failing to watch the recording in her possession before submitting her affidavit. She swore to a physician attribution that she copied from another officer's report which the physician's own report, in her file, contradicted. And she left out the normal examination because she made the unilateral determination that it was "just nothing," while testifying that she would have included an abnormal exam as "material information." MF 9, 21, 32-33, 35; Ex. 8, Jones Dep. 116:6-11.

6. Defendants assert that "no evidence shows that Detective Jones withheld exculpatory information." Doc. 47 at 19.

   **<u>Response</u>:** The affidavit did not disclose CJ's denial, her statements about "Granny," the normal examination, the absence of any disclosure to Dr. Rodriguez, or that Ms. Green was the sole and unwitnessed source of the statements attributed to CJ outside the interview, and Detective Jones admits that Judge Victory "wouldn't have known" of CJ's denial or contradictory statements from her affidavit. MF 33-34, 38. Detective Jones also referred the magistrate to "Please review the DVD recording for more details in reference to (C.J)." without providing a copy of the DVD for Judge Victory to review. MF 31.

7. Defendants assert that the District Attorney used Detective Jones's case file "to present the case" to the grand jury. Doc. 47 at 20.

   **<u>Response</u>:** The District Attorney received "[j]ust the affidavit" when it approved the warrant application. Ex. 8, Jones Dep. 39:4-17. The actual evidence presented to the grand jury was testimony from Detective Jones, who was the only witness. MF 37. During her testimony, she repeated the physician attribution, did not disclose CJ's contradictory statements, the statements about "Granny," or the normal examination, and testified falsely that Calvin was "a convicted felon." *Id.*

8. Defendants assert that the state court held that the omitted information "would not have altered the probable cause determination." Doc. 47 at 20.

   **<u>Response</u>:** Judge Hathaway addressed a single omission, CJ's denial, supplemented the affidavit with his own impressions of the recording Judge Victory never saw, and found only that Detective Jones did not "intentionally tr[y] to mislead Judge Victory." He never addressed whether Detective Jones's actions were reckless. Doc. 47 at 7; Defs.' Ex. C at 35-36.

## ARGUMENT

**1. The corrected affidavit does not establish probable cause, and the independent-intermediary doctrine does not apply.**

Defendants agree on the governing framework. A magistrate's warrant insulates the officer who sought it unless her affidavit contained false statements or material omissions, made knowingly and intentionally or with reckless disregard for the truth, that were necessary to the finding of probable cause. Doc. 47 at 12-13 (quoting *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024)). That is the *Franks* inquiry, which is "functionally" an exception to the independent-intermediary doctrine. *Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021), citing *Franks v. Delaware*, 438 U.S. 154 (1978). Defendants' quotation of *Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017) for liability based on "knowing and intentional omissions," Doc. 47 at 12, does not narrow the inquiry, because omissions made with reckless disregard for the truth are equally actionable. *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006); *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990).

In a *Franks* case like this one, arguable probable cause is measured on the corrected affidavit. *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018); *Hale*, 899 F.2d at 400-02; *Kohler*, 470 F.3d at 1113 n.9. Whether the corrected affidavit establishes probable cause is a question of law. *Davis v. Hodgkiss*, 11 F.4th 329, 334 (5th Cir. 2021). In his Motion for Summary Judgment, Calvin set out the corrected affidavit and showed that it does not. Doc. 40-1 at 10-18; Ex. 23. Defendants' motion does not address the corrected affidavit at all. It asks instead whether the facts "known to" Detective Jones supported probable cause and answers by listing only the facts that support this artificial standard. Doc. 47 at 13-14.

That is not the test, and it would not help Defendants if it were. The "totality of the circumstances" that Defendants invoke, Doc. 47 at 11-12 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)), includes the circumstances that weigh against probable cause, and an officer "may

not disregard facts tending to dissipate probable cause." *Bigford v. Taylor*, 834 F.2d 1213, 1218 (5th Cir. 1988). Defendants' list disregards all of them.

Six of its nine facts came from Ms. Green alone: her report of the child's complaints of pain, her accounts of the bath, the apology, and the doll, her report of nightmares, and her report of what Calvin's girlfriend told her. Doc. 47 at 13-14. The remaining three are the forensic interview, stripped of the child's denial and her statements about "Granny," a normal medical examination that Detective Jones unilaterally dismissed as "just nothing," and a notation in a medical chart that identifies no specific person and is the double hearsay of Dr. Rodriguez reporting Ms. Green's version of what the child stated during her LSU Pediatric Clinic exam. *Id.*; DF 1-4. Detective Jones admitted she did not have the record of the LSU Pediatric exam in her possession when she prepared her affidavit. Ex. 8, Jones Dep. 67:22-68:9.

Probable cause is also measured against the offense charged. *Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024). The question is not whether there was a fair probability that Calvin committed some crime, but whether there was a fair probability that he committed first-degree rape, which requires anal, oral, or vaginal sexual intercourse with a child under thirteen. La. R.S. 14:41, 14:42(A)(4). The only allegations of any such act came from Ms. Green. Defendants admit that her statements were the sole basis for the first-degree rape charge, and they do not dispute Detective Jones's testimony that, without Ms. Green's statements, CJ's statements would not establish probable cause on their own. MF 22-23; Doc. 49 at 7; Ex. 8, Jones Dep. 108:9-109:11.

The question is therefore whether Ms. Green's uncorroborated account, with the evidence bearing on her reliability restored, supplied "reasonably trustworthy information" that Calvin committed that offense. *Bigford*, 834 F.2d at 1218. It did not. The presumption that a complaining witness is reliable does not apply where "there is some other indication that the information is not reliable," *Hale*, 899 F.2d at 399. Here, Detective Jones left out every such indication that Ms. Green was not a reliable source of information. Doc. 40-1 at 14-18; Doc. 53 at 5.

Defendants' authorities do not suggest otherwise. In *Hall v. Trochessett*, 105 F.4th 335 (5th Cir. 2024), the plaintiff did not dispute the contents of the affidavit and identified no information withheld from the magistrate. The court applied the rule that the chain of causation is broken only where all the facts are presented to the intermediary and the officer does not withhold relevant information from it. *Id.* at 341-42. Here, Detective Jones withheld the facts listed above. The statement on which Defendants rely, that the Constitution "does not guarantee that only the guilty will be arrested," Doc. 47 at 15, is true, and it is beside the point. Calvin's claim is not that his innocence proves he was wrongfully arrested. He claims that he was wrongfully arrested on an affidavit that did not tell the magistrate the whole truth, which Detective Jones admitted she knew she was required to disclose. Ex. 8, Jones Dep. 49:23-50:5; 50:21-52:8; 52:19-23.

**2. The record establishes, and at a minimum creates a genuine dispute, that Detective Jones acted with reckless disregard for the truth.**

Defendants characterize Calvin's claim as an argument that Detective Jones "should have known more or should have given greater weight to specific facts," which they frame as "negligence or [an] innocent mistake." Doc. 47 at 14. That is not Calvin's claim. His claim rests on what Detective Jones swore to and what she left out from facts already in her possession. The following three examples illustrate the point.

*The physician attribution*. Detective Jones swore that Dr. Rodriguez "advised" that CJ identified "her father B/M, Calvin Johnson [1994]" as the person who hurt her. She copied that sentence from Officer Thompson's report, never spoke to Dr. Rodriguez or Officer Thompson, and had in her file Dr. Rodriguez's own report, which records that no disclosure was made in her presence and identifies no one. MF 6, 9, 12, 32; Ex. 8, Jones Dep. 59:16-60:1; 122:9-17.

*The interview*. Detective Jones swore that CJ "did not make any further statements" beyond the three accusatory statements she quoted. She knew she had heard the interview only "to a certain extent," she obtained a DVD copy of the interview on the same day, she had no deadline to complete

her investigation, and she had the recording in her possession for fifteen days without watching it. With this knowledge, she swore to her own summary of the interview knowing it would be the only evidence on which Judge Victory would base his determination of whether probable cause existed for Calvin's arrest. MF 10, 14, 21, 33; Ex. 8, Jones Dep. 116:6-11. When Detective Jones actually watched the recording at the Motion to Quash Hearing, long after the arrest warrant had been issued, she admitted she heard CJ twice deny the accusation. MF 16, 38.

*The medical evidence*. Detective Jones swore to Ms. Green's account that redness was seen at LSU Ochsner and that CJ could not be touched, while omitting the physician's findings, made just hours later and recorded in the report in her file, of "no significant redness or swelling" and "no signs of injury." MF 5, 9, 24, 34; Ex. 11 at 3. She unilaterally decided to omit the normal examination because she considered it "just nothing," and she testified that she would have included an abnormal examination as "material information." MF 35. An officer "cannot make unilateral decisions about the materiality of information." *Kohler*, 470 F.3d at 1113 n.9.

Defendants rely on the statement in *Winfrey v. Rogers* that recklessness "requires proof that the defendant in fact entertained serious doubts as to the truth of the statement." Doc. 47 at 13 (quoting 901 F.3d 483, 494 (5th Cir. 2018)). That standard does not mean recklessness can only be proved by a defendant's admission. When the omitted facts are "clearly critical" to probable cause, recklessness may be inferred from the omission itself. *Hale*, 899 F.2d at 400.

Defendants' own cited authority, *Jones v. City of Grand Prairie*, applied that very rule to a detective who omitted from his affidavit a sexual assault nurse examiner's notes which recorded the child victim's description of an attacker who did not match that plaintiff, and held that a reasonable jury could find the omission clearly critical and reckless. *Jones v. City of Grand Prairie*, No. 99-10104, 209 F.3d 719 (5th Cir. Feb. 9, 2000) (unpublished); *see* Doc. 47 at 20. And in *Winfrey* itself, applying the same standard, the Fifth Circuit held that an affiant's misstatement of the scent-lineup evidence

and omissions concerning the informant created a genuine dispute on recklessness and that the plaintiff was "entitled to present his case to the factfinder." 901 F.3d at 494-96.

The facts omitted here were clearly critical. Ms. Green was the only source of the allegations that supported the charge, and every omitted fact bore on whether her account, and the child's, could be believed. MF 22-25. The record also contains direct evidence of Detective Jones's doubts. She considered whether Ms. Green was coaching the child and could not rule it out. MF 27; Ex. 8, Jones Dep. 111:9-24. She knew she had not heard the whole interview. Ex. 8, Jones Dep. 116:6-11. And she described her own assessment of the evidence as being that there was "just enough to submit an arrest warrant or for review." Doc. 47 at 6 n.30. Her testimony that she nonetheless believed the affidavit was accurate, Ex. 8 Jones Dep. 136:4-9, is not a basis for judgment in her favor. It is evidence that undermines her credibility when considered in conjunction with the documents and recording that were in her possession when she prepared her affidavit and contradicted what she swore.

Further, Calvin does not ask the Court to insert into the corrected affidavit facts that Detective Jones did not know at the time she prepared her affidavit, but her failure to speak to the physician, the responding officer, the child's mother, or the adult who lived in the home with the child are each relevant to show recklessness, not as a separate basis for liability. *Bigford*, 834 F.2d at 1218; MF 12, 28-29. Those facts were available to Detective Jones at the time she prepared her affidavit and would have only required that she perform minimal further investigation.

**3. Detective Jones acted with malice.**

Defendants' own authorities define malice to include a charge made "with reckless disregard for whether it is false or not," and they recognize that malice "may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights." Doc. 47 at 19 (quoting *Brimmer v. A. Copeland Enters., Inc.*, 609 So. 2d 847 (La. App. 5 Cir. 1992), and *Stokes v. Faber*, 552 F. Supp. 3d 225, 239-40 (E.D. La. 2021)); *Miller v. E. Baton Rouge Par. Sheriff's Dep't*, 511 So. 2d 446, 453 (La. 1987). Ill will is not required to establish malice, so

Defendants' reliance on Calvin's testimony to show its absence, Doc. 47 at 19 n.53, is a strawman. Further, Defendants' self-serving assertion that Detective Jones had "an honest and reasonable belief in the allegations she made," Doc. 47 at 21, does not negate recklessness. An honest belief in allegations built on a summary Detective Jones knew was incomplete is not a reasonable one.

None of the conduct on which Defendants rely to argue against malice cures what the affidavit told the magistrate. Doc. 47 at 19-20. The affidavit's reference to Dr. Rodriguez's report and its instruction to "review the DVD recording" told Judge Victory nothing, because he had nothing but the affidavit and no access to Detective Jones's file. MF 31. The District Attorney also received "just the affidavit" when approving the warrant application. DF 7.

That Calvin later received Detective Jones's file in criminal discovery says nothing about what the magistrate was provided when reviewing the affidavit and deciding whether to issue the arrest warrant. Doc. 47 at 20. The state court did not hold that the omitted information "would not have altered the probable cause determination." DF 8; Doc. 53 at 7-8. And the admission that Detective Jones failed "to include information that she did not deem material" is itself evidence of recklessness. *Kohler*, 470 F.3d at 1113 n.9.

Nor do Defendants' malice cases apply. *Morin v. Caire*, 77 F.3d 116, 122-23 (5th Cir. 1996), involved "no misstatement of facts, just arguable omissions." Doc. 47 at 20. This affidavit contained both misstatements and material omissions. *Pittman v. Boyd Biloxi, L.L.C.*, 566 F. App'x 344, 347 (5th Cir. 2014), held that private casino employees' failure to investigate further was, on its own, "negligence at most," but did not include all of the other evidence of recklessness displayed by Detective Jones in this case. Doc. 47 at 20. In *Jones v. City of Grand Prairie*, the Court held an officer's recklessness could be reasonably inferred from the officer's material omissions from an arrest warrant. *Jones*, 209 F.3d 719, *3.

Finally, the observation that malicious-prosecution actions are not favored under Louisiana law, Doc. 47 at 11 (citing *Kennedy v. Sheriff of E. Baton Rouge*, 935 So. 2d 669, 690 n.20 (La. 2006)),

describes the elements of the tort. It does not alter the Rule 56 standard, under which the evidence and every reasonable inference from it are viewed in Calvin's favor. *Tolan*, 572 U.S. at 656-57.

**4. Detective Jones is not entitled to qualified immunity.**

Here, Calvin bears the burden of negating qualified immunity with all inferences drawn in his favor. *Brown*, 623 F.3d at 253. He meets that burden on both prongs. The first, a constitutional violation, is established for the reasons in Parts 1 and 2. On the second, Defendants argue that Calvin "can point to no statute, jurisprudence, or other authority that places the question of probable cause 'beyond debate.'" Doc. 47 at 18-19. That frames the wrong question.

In a *Franks* case, the clearly established right is the right to be free from an arrest procured by an affidavit containing knowing or reckless misstatements that are necessary to the finding of probable cause, and that right has been clearly established since *Franks* was decided in 1978, and as to omissions of material fact since at least *Hale* in 1990. *Winfrey*, 901 F.3d at 494; *Hale*, 899 F.2d at 400-02; *Kohler*, 470 F.3d at 1113 & n.9; *see also Thompson v. McGehee*, No. 25-10196, 2026 WL 2069890, at *3 & n.11 (5th Cir. July 17, 2026). No reasonable officer in July 2023 could have believed it lawful to swear to the contents of an interview she heard only "to a certain extent" without reviewing the recording in her possession, to attribute to a physician an identification the physician never made, or to recite a grandmother's report of redness while withholding the physician's finding of none.

Defendants' argument that "officers of reasonable competence could disagree" about probable cause, Doc. 47 at 18 (citing *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005)), assumes that the facts on which officers would disagree are limited to the nine facts in Defendants' list. In a *Franks* case, arguable probable cause is measured on the corrected affidavit, which includes the facts Detective Jones left out. *Winfrey*, 901 F.3d at 494-96; *Hale*, 899 F.2d at 400-02. The weighing of those facts was for the magistrate, not Detective Jones. *Kohler*, 470 F.3d at 1113 n.9. Further, a magistrate's issuance of a warrant does not shield an officer whose application a reasonably well-trained officer would have

known failed to establish probable cause. *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986); *see* Doc. 47 at 18.

*Malley*'s standard is objective. It asks what a "reasonably well-trained officer" would have known, *Id.* at 345, not what Detective Jones, six months into her assignment to the Investigations Division with no training in how to properly investigate sex crimes, believed. Doc. 47 at 3, 18; Ex. 8, Jones Dep. 10:18-22; 13:19-23; 17:17-18:10. Further, the Supreme Court of the United States has held that an officer's "subjective beliefs" are irrelevant to qualified immunity. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Defendants' reliance on Detective Jones's self-serving testimony that she "reasonably believed there was enough evidence to establish probable cause," Doc. 47 at 18, therefore adds nothing. To the extent her state of mind matters to whether she acted recklessly, it is disputed. DF 5.

**5. Neither the District Attorney, the grand jury, nor the state court insulates Detective Jones.**

Defendants' motion also suggests that the District Attorney's approval of the warrant application, the grand jury's indictment, and Judge Hathaway's ruling on the motion to quash independently support probable cause. Doc. 47 at 6-7, 13, 20. Calvin has addressed each in his memorandum (Doc. 40-1 at 8-10, 21-22) and reply (Doc. 53 at 7-9), incorporated here as it set forth *in extenso*. Plaintiff summarizes the points below.

<u>*The District Attorney*</u>. Detective Jones specifically testified that the District Attorney received "[j]ust the affidavit." Ex. 8, Jones Dep. 39:4-17. Its approval of the application therefore added no information beyond what Judge Victory had, and it cannot cure what she omitted from her affidavit. DF 7.

<u>*The grand jury*</u>. A grand jury breaks the chain of causation only where "all the facts are presented," and "[a]ny misdirection of the magistrate or the grand jury by omission or commission perpetuates the taint of the original official behavior." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir.

1988); *Winfrey*, 901 F.3d at 497. Detective Jones was the only witness who testified to the grand jury. Her testimony included the affidavit's physician attribution and added a new falsehood, that Calvin was "a convicted felon," which she admits was untrue. MF 37. Even if the District Attorney was in possession of her file (Doc. 49 at 10) that does not mean the grand jury heard what was in it, and that does not remedy her false testimony and material omissions. Calvin offers that testimony only to show that the grand jury was tainted and therefore not an independent intermediary, not as a separate basis for liability, therefore grand jury witness immunity under *Rehberg v. Paulk*, 566 U.S. 356, 369-70 (2012) is not applicable here. *Wilson v. Stroman*, 33 F.4th 202, 212 n.7 (5th Cir. 2022). There is also no evidence of what evidence was presented to the second grand jury, which returned a No True Bill, and therefore there is no evidence whether the affidavit's taint was perpetuated to that grand jury or not. MF 39.

*Judge Hathaway's ruling*. Defendants concede that the denial of the motion to quash was not a final judgment. Doc. 49 at 15. Judge Hathaway applied Louisiana's intentional-misrepresentation standard, addressed a single omission, supplemented the affidavit with his own impressions of a recording Judge Victory never saw, and did not have the admissions Detective Jones has since made under oath. DF 8; *State v. Ogden*, 391 So. 2d 434, 438-39 (La. 1980); *United States v. Astroff*, 578 F.2d 133, 136 n.1 (5th Cir. 1978).

**6. Calvin's state-law claim and his claim against the City survive.**

Defendants treat the elements of Calvin's federal and state malicious-prosecution claims as coextensive and make no separate argument for dismissing the state-law claim. Doc. 47 at 10-11 (citing *Armstrong v. Ashley*, 60 F.4th 262, 279 (5th Cir. 2023)). Federal qualified immunity does not bar Calvin's state-law malicious prosecution claim, so that claim and the City's liability survive even if Defendants' motion on qualified immunity is granted.

## CONCLUSION

Defendants ask the Court to decide probable cause on a list of facts that Detective Jones unilaterally selected, rather than on the affidavit as it should have been written. Measured correctly, with the false physician attribution struck and CJ's denials, her "Granny" answer, the normal examination, and the absence of any disclosure to Dr. Rodriguez restored, the affidavit rests entirely on Ms. Green's uncorroborated account and does not establish probable cause that Calvin committed first-degree rape. Defendants do not contend otherwise and their motion never addresses the corrected affidavit.

Defendants also cannot show the absence of a genuine dispute on recklessness. Detective Jones swore to the contents of an interview she had not fully heard, attributed to a physician an identification the physician's own report contradicts, and withheld a normal examination she decided was "just nothing," while the contrary evidence sat in her own file. That same evidence establishes malice, which Louisiana law permits a jury to infer from the absence of probable cause and from reckless disregard of the accused's rights.

Qualified immunity does not apply, because the right to be free from arrest on an affidavit containing knowing or reckless misstatements and omissions has long been clearly established, and arguable probable cause is measured on the corrected affidavit, not the one Detective Jones chose to submit. Neither the District Attorney, who received only the affidavit, nor the grand jury, which heard only Detective Jones, nor Judge Hathaway's interlocutory ruling on a single omission under a different standard broke the chain of causation.

Finally, because the claims against Detective Jones survive, so do Calvin's state-law claim and the City's vicarious liability for it.

For the foregoing reasons, Plaintiff, Calvin Johnson, respectfully requests that the Court deny Defendants' Motion for Summary Judgment in its entirety and, for the reasons stated in his

memorandum (Doc. 44-1) and reply (Doc. 53), grant his Motion for Partial Summary Judgment (Doc. 44).

Respectfully submitted,

BROUSSARD, DAVID & MOROUX

BY: */s/ Robert B. Brahan, Jr.*___________
Robert B. Brahan, Jr. (La. Bar No. 31390)
557 Jefferson Street
Post Office Box 3524
Lafayette, Louisiana 70502-3524
Telephone: (337) 233-2323
Facsimile: (337) 233-2353
Email: robert@bdm.law
**COUNSEL FOR PLAINTIFF,**
**CALVIN XAVIER JOHNSON**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of November, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Robert B. Brahan, Jr*
ROBERT B. BRAHAN, JR.